SAVOY, Judge.
Four different plaintiffs, all rice farmers, brought suit for damages allegedly sustained by them as a result of salt water escaping from an oil well water storage reservoir or pit.
Plaintiffs’ petition alleged specifically that their respective lands in three cases border on Coulee Kinney, and in the fourth case, on Coulee Hanks, which flows into Coulee Kinney, in Vermilion Parish, Louisiana; that plaintiffs prepared their lands for planting rice in April, 1962, by drawing water for irrigation from the two coulees; that, in so doing, it came to their attention that the water in both coulees was polluted with salt water to a degree prohibiting the planting of rice; that, consequently, they were obliged to re-prepare their respective lands for planting, incurring additional expenses therefor, in which amounts they claim damages against the defendant for allowing the salt water to escape from the well site, into the coulees and finally onto their lands.
Initially, the suit was brought against “Edward Buckley, d/b/a Estate of E. L. Buckley”, and plaintiffs’ petition alleged that Mr. Buckley was a non-resident. Consequently, a curator ad hoc was appointed to represent him, and a writ of non-resident attachment was issued by the court below, attaching the oil well in question, its appurtenances and production. A $250.00 bond was required of plaintiffs.
Following the filing of plaintiffs’ suit, Elliot Ross Buckley, a resident of New Orleans, Louisiana; and five other persons, including Edward Buckley (actually Edmund L. Buckley, Jr.), all of whom are nonresidents, filed a rule on January 15, 1963, seeking to have the writ of attachment against the well dissolved. The rule stated that the well was owned by all of them in indivisión; and that, consequently, plaintiffs had attached property of persons not even parties to the suit; and that the writ was not effective as against Elliot Ross Buckley since he is a resident of Louisiana. In addition, damages for wrongful attachment and attorney’s fees were sought in the rule, as well as a plea to require plaintiffs to increase their bond to the amount of their demands. Plaintiffs answered the rule.
Edmund L. Buckley, Jr., on January 23, 1963, filed two exceptions: (1) the declina-tory exception of lack of jurisdiction ra-tione personae, alleging that the attachment was illegal and therefore jurisdiction over him had not thereby been gained; and, (2) the peremptory exception of non-joinder of indispensable parties, as to which he alleged that owners other than himself had not been made parties to the suit.
On January 23, 1963, plaintiffs amended their original petition so as to do the following:
(a) Show the name of defendant Edward Buckley, as Edmund L. Buckley, Jr.;
(b) Join as parties defendant Elliot Ross Buckley of New Orleans, and Mrs. Beryl M. Buckley, C. Anthony Buckley, Mrs. Beryl Buckley Milburn, Jeanette Meeks Ellis, all non-residents;
(c) Join Traders and General Insurance Company, defendants’ liability insurance carrier, as a party defendant;
(d) Allege that the writ of attachment previously issued should be maintained as against the additional non-resident owners.
*304 The defendant, Traders and General Insurance Company, filed a motion for summary judgment, and, subsequently, on a showing that the policy afforded no coverage for damages of the nature claimed by plaintiffs, was released. That company is, thus, eliminated insofar as the further discussion of the instant case is concerned.
On March 6, 1963, plaintiffs filed a second supplemental and amending petition, asking that the' writ of attachment previously issued be dissolved, and stating that the owner-defendants, other than Edmund L. Buckley, Jr., had made themselves parties to the suit by appearance; hence, the writ was no longer necessary. On this petition, an order issued, dissolving the writ.
The next pleading of importance to this decision is a declinatory exception filed by all of the non-resident defendants, in which they resisted plaintiffs’ original and supplemental petitions on the basis of lack of jurisdiction ratione personae, alleging they had never been properly served or cited.
Thereafter, all of the defendants answered plaintiffs’ suit, generally denying any liability to plaintiffs, pleading contributory negligence on plaintiffs’ part in irrigating from a public drainage canal without first testing the water, reconvening for damages for wrongful issuance of the writ of attachment, and reserving all rights under the various exceptions previously filed.
On September 13, 1963, plaintiffs filed a third supplemental and amending petition, asking for an increase in the amount of damages based on alleged damage to a crayfish pond owned by one of the plaintiffs, Dudley John LeBlanc. To this, defendants, Edmund L. Buckley, Jr. and Elliot Ross Buckley, filed an exception of prescription inasmuch as the claim was made more than one year after April, 1962. The exception was apparently referred to the merits, and overruled, as, in our opinion, it should have been since the damage complained of arose from the same incident, required the same corrective measures, and was not, therefore, a separate cause of action.
The exceptions to the jurisdiction and non-joinder of indispensable parties filed by Edmund L. Buckley, Jr. were overruled by the lower court.
The exception to the jurisdiction filed by the non-resident defendants other than Edmund L. Buckley, Jr. was sustained by the lower court.
On the merits, the lower court granted judgment in favor of plaintiffs in damages against two defendants, Edmund L. Buckley; Jr. and Elliot Ross Buckley, and from that judgment the said defendants have appealed.
With regard to the merits of the instant case, we quote, with approval, from the written opinion of the district judge, as follows:
“The court feels that the questions raised in the main action are factual in nature and a brief recitation of the facts of the case is necessary. Testimony elicited was generally to the effect that on or about the latter part of March or the first days of April, 1962, salt water was permitted to escape from a salt water pit used by the defendants in collection of the salt water produced by the oil wells mentioned above. It was further brought out that this salt water then flowed from the pit into a ditch, which ditch then discharged into Coulee Kinney. Plaintiffs herein are rice farmers whose farms adjoin or are in close proximity to Coulee Kinney. At the time in question these farmers, as was their annual practice, pumped water from Coulee Kinney on to their respective rice farms, in preparation of planting their crops. However, they noticed a possibility that the water they were pumping might contain salt to such an extent to be injurious to their crops, and immediately stopped pumping, had tests made which confirmed their suspicions.
“Mr. Rene Bourriaque, a Water Inspector Stream Control and Water Pollution *305 expert for a period of approximately thirty years, presently employed by the Louisiana Department of Wildlife and Fisheries, was called in, in an effort to ascertain the source of the contamination. His testimony was to the effect that he found a dangerous level of salinity in the vicinity of the pumping operations, in the fields of the plaintiffs, but was unable to find excess salinity where the coulee joins the Vermilion River nor at the source of Coulee Kinney which is of some distance to the north of the farms of plaintiffs. Mr. Bourriaque also checked other oil wells in the area and could find no loss of salt water but upon checking the wells in question further, the pit was losing salt water, that same was then drained into a drainage ditch, and eventually being dumped into Coulee Kinney. In fact, the court was left with the impression that this loss from the Buckley pits is the only possible source of the contamination bringing on the damage suffered by the plaintiffs.
“An attempt was made by the defendants to prove that the salt water which escaped from their pits was of an insignificant amount and incapable of increasing the salinity by any appreciable extent. However, this proof was more, the court feels, speculative than positive.
“The only attempt made by the defendant to show contributory negligence was in cross-examination of the plaintiffs wherein it was brought out that plaintiffs had not made salinity tests prior to commencement of their pumping operations. One of the plaintiffs testified that he had used water from Coulee Kinney for a period of fifteen years and had never been bothered by salt water, while one of the others testified that in ten years of farming using the water of Coulee Kinney for irrigation, he had not had any previous salt water problem. The court feels that in view of this testimony, the plaintiffs were under no duty to test for salt water, and consequently, were not guilty of contributory negligence in pumping on their fields believing that they were doing so with no attendant risks of excess salinity.”
Additionally, one of the defendants’ employees, Mr. Joe Garteiser, testified there was an overflow of salt water at the pit.
We, therefore, conclude that there is no manifest error in the findings of the district judge regarding negligence.
On the question of quantum, we quote again, with approval, from the district judge’s written opinion, as follows:
“By reason of the salt water which was pumped onto their field, plaintiffs were required to drain their fields, open their levees, repump fresh water into their field and flush same prior to their being able to plant their crops, and the court will allow damages for the expenses entailed in these operations.
“Expert testimony was introduced by both sides in an attempt to show the value or costs of these various operations. Expert for plaintiffs testified that pumping operations should be valued at $8.00 per hour, while on the other extreme, defendants’ expert testified that this should not cost more than about $3.00 per hour. However, the court feels that a figure of $5.00 per hour would be nearer correct, thus giving the plaintiff a fair figure for a return on his investment and compensation for the labor entailed. As to plowing operations, the court feels that a figure of $3.00 per hour is just compensation.”
The respective amounts awarded to plaintiffs for pumping, tractor work and labor were: Amson Duhon — $688.50; Ivy Pre-jean — $702.00; Edwin Duhon — $490.00; Dudley John LeBlanc — $486.00.
 As to those amounts, defendants complain that:
(a) Plaintiff, Dudley John LeBlanc, by his own testimony, pumped a total of 48 hours, which, at the $5.00 per hour allowed by the lower court, would be $240.00 rather than the $360.00 awarded. We agree.
(b) Plaintiff, Ivy Prejean, did additional draining and pumping from and after April *306 13, 1962, when the salt content on his land was forty grains to the gallon. Based on the testimony of Mr. Murphy Veillon, who stated that anything over seventy-five grains to the gallon is considered unsafe, defendants take the position that the re-working on Prejean’s part after April 13th was unnecessary, and, therefore, not compensa-ble. Here, we disagree. The evidence shows that after draining and reflooding his land the first time, Prejean discovered there was still a substantial salt content in the water, although perhaps within safe limits. We are of the opinion it was reasonable for Prejcan, after making this discovery, to again drain and reflood his land with fresh water. We, accordingly, agree with the trial judge that he is entitled to recover the costs of the draining and pumping operations which occurred after April 13, 1962.
Counsel for defendants claims damages and attorney’s fees resulting from the wrongful issuance of the writ of attachment. The record shows that the writ of attachment was granted on January 9, 1963; that counsel for defendants filed a rule to dissolve said writ of attachment on January 15, 1963. A hearing was had on the rule to dissolve the writ on February 13, 1963. On March 6, 1963, by order of court, plaintiffs voluntarily dismissed said writ of attachment. Counsel for defendants is entitled to attorney’s fees even though the writ of attachment was dissolved voluntarily, for a hearing was had on said motion to dissolve. This Court is of the opinion that counsel for defendants is entitled to a fee of $300.00 for services rendered in connection with said attachment proceedings.
Defendants also claim harassment, embarrassment, loss of good will and injury to their good name resulting from the wrongful issuance of the writ of attachment. We are of the opinion that defendants did not prove, with certainty, the above claims; therefore, these items are denied.
For the reasons assigned, the judgment of the district court is amended so as to grant judgment in favor of plaintiffs against defendants, Edmund L. Buckley, Jr. and Elliot Ross Buckley, in solido; and so as to reduce the judgment granted in favor of plaintiff, Dudley John LeBlanc, from the sum of $486.00 to the sum of $366.00; and so as to grant defendant, Elliot Ross Buckley, judgment against plaintiffs in the sum of $300.00 as attorney’s fees. In all other respects, the judgment of the district court is affirmed at appellant’s costs, including the costs of this appeal.
Amended and affirmed.